## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TIVON NEALS,** | **Civil Action No. 13-4398 (FLW)** |
| **Petitioner,** | |
| v. | **OPINION** |
| **CHARLES WARREN, et al.,** | |
| **Respondents.** | |

### I.   INTRODUCTION

This matter has been opened to the Court by Petitioner Tivon Neals' ("Petitioner" or "Neals") filing of an Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 7) and his filing of a "Motion for Leave to Conduct Discovery and Expand the Record" (see ECF No. 21.), which is dated January 12, 2015, and was filed after Respondents submitted their Answer. The Court previously deferred decision on that motion and ordered Respondents to file a response, which the Court has received. (ECF Nos. 25, 27.)  For the reasons explained in this Opinion, the Court at this time will deny Petitioner's motion for discovery and to expand the record (ECF No. 21), but will construe the affidavit attached to that motion as an attempt to amend and amplify Ground Five of the Amended Petition, which asserts a *Brady* claim.  (*See id.*)  The Court will grant Petitioner's motion to amend to the extent Petitioner seeks to clarify his claim; however, because it appears from the record before the Court that Petitioner has not duly exhausted the portion of the *Brady* claim related to the State's alleged withholding of the search warrant application by presenting those facts to the state court in the first instance, the Court will dismiss the Amended Petition as mixed, and will provide

1

Petitioner with 45 days to either (1) submit a Second Amended Petition that includes both his exhausted claims and the unexhausted portion of his *Brady* claim, along with a motion for a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005) or (2) advise the Court that he intends to proceed with his original Amended Petition (*i.e.*, ECF No. 7) and withdraw the unexhausted portion of his *Brady* claim related to the search warrant application.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### a.   State Court Proceedings

The Court recounts only the facts necessary to the instant Opinion. Following a trial on two indictments, Neals was convicted of first-degree murder, contrary to N.J.S.A. 2C:11–3(a)(1) and (2); second-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39–4(a)(1); third-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39–5(b); fourth-degree retaliation against a witness or informant, contrary to N.J.S.A. 2C:28–5(b); and third-degree terroristic threats, contrary to N.J.S.A. 2C:12–3(a). *See State v. Neals*, No. A-0207-10T2, 2012 WL 1161556, at *1 (N.J. Super. Ct. App. Div. Apr. 10, 2012). After merging the possession of a weapon for an unlawful purpose charge into the murder charge, the trial judge sentenced Neals to incarceration for fifty years, subject to an eighty-five percent period of parole ineligibility. On the unlawful possession of a weapon conviction, the judge imposed a concurrent four-year term. The judge also merged the terroristic threat conviction into the retaliation conviction, and imposed a consecutive prison term of four years with a one-year period of parole ineligibility. *See id.* Neals appealed his convictions, and the New Jersey Appellate Division affirmed, *State v. Neals*, 2007 WL 1804079 (App. Div. June 25, 2007), and the Supreme Court denied certification. 196 N.J. 86 (2008).

In December 2008, Petitioner filed his Verified Petition for Post-Conviction Relief

("PCR"). The petition requested assignment of counsel and raised two grounds for relief:

> GROUND I
>
> TRIAL COUNSEL WAS INEFFECTIVE FOR HIS FAILURE TO
> CORRECT PERJURED TESTIMONY OF THE STATES [sic]
> KEY WITNESS MAINLY TRENT TALLEY
>
> GROUND II
>
> PROSECUTOR MISCONDUCT WHEREAS THE START
> SUPRESSED BRADY MATERIAL IN THE FORM OF A
> WITNESS STATEMENT MAINLY ANTHONY TUCKER WAS
> LOST OR DESTROYED THREFORE VIOLATING
> DEFENDNATS [sic] RIGHT TO A FAIR TRIAL AND DUE
> PROCESS OF LAW.

(ECF No.16-21, Petitioner's Verified Pro Se Petition for Post-Conviction Relief.) Howard

Kraft, Jr., was assigned as Petitioner's PCR counsel and submitted additional briefing on behalf

of Petitioner. The trial judge heard argument on the petition on January 29, 2010. (ECF No. 16-

52, Transcript of PCR Motion dated Jan. 29, 2010.) In a written opinion filed on February 2,

2010, the PCR court dismissed the petition, concluding that Neals failed to establish that he

received constitutionally ineffective assistance from either trial or appellate counsel. The judge

also concluded that some of Neals' arguments were barred under Rule 3:22–5. (ECF No. 16-25,

Letter Opinion Denying PCR dated Feb. 2, 2010.) The Appellate Division affirmed. *See State v.*

*Neals*, 2012 WL 1161556 (App. Div. Apr. 10, 2012). The Supreme Court denied certification.

212 N.J. 455 (Nov. 16, 2012).

### b. Habeas Proceedings

Petitioner filed his initial habeas corpus Petition on July 19, 2013. (ECF No. 1.) After

the Court notified Petitioner of his right to file a single all-inclusive Petition pursuant to *Mason*

*v. Meyers*, 208 F.3d 414 (3d Cir. 2000) (ECF No. 2), Petitioner elected to withdraw his Petition

and file an Amended Petition (ECF No. 3). On August 20, 2013, the Court dismissed

Petitioner's Petition without prejudice to his filing of an all-inclusive § 2254 petition.   (ECF No.

4.) On August 29, 2013, Petitioner submitted a motion for a stay in order to exhaust unspecified

claims which Petitioner had not raised due to the alleged ineffectiveness of his PCR counsel.

(ECF No. 5-1, Pet. Aff. at ¶ 4.)  On October 13, 2013, the Petitioner submitted an Amended

Petition for a writ of habeas corpus.  (ECF No. 7.)  In his Amended Petition, Petitioner raises five

claims for relief:

> GROUND ONE:  PETITIONER WAS DENIED EFFECTIVE
> ASSISTANCE OF COUNSEL WHEN THE TRIAL COURT
> DENIED THE MOTION TO WITHDRAWAL TRIAL
> COUNSEL; DESPITE THE FACT COUNSEL WAS A
> WITNESS WITH PERSONAL KNOWLEDGE ABOUT
> MATERIAL FACTS IN DISPUTE.
>
> GROUND TWO:  THE PETITIONER'S SIXTH AMENDMENT
> RIGHT TO SELF-REPRESENTATION WAS VIOLATED
> WHEN THE PETITIONER REQUEST[ED] THAT HIS
> DEFENSE COUNSEL BE ALLOWED TO WITHDRAW SO
> [PETITIONER] COULD USE HIM AS A WITNESS, AND THE
> TRIAL COURT FAILED TO HOLD A PROPER INQUIRY.
>
> GROUND THREE:  THE PETITIONER WAS DENIED DUE
> PROCESS AS GUARANTEED BY THE FOURTEENTH
> AMENDMENT TO THE UNITED STATES CONSTITUTION
> WHEN THE STATE'S PROSECUTOR FAILED TO CORRECT
> KNOWINGLY FALSE TESTIMONY GIVEN BY TRENT
> TALLEY, THE STATE'S PRIMARY WITNESS AGAINST
> PETITIONER.
>
> GROUND FOUR:  THE PETITIONER WAS DENIED
> EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED
> BY THE SIXTH AMENDMENT TO THE UNITED STATES
> CONSTITUTION WHEN PETITIONER'S DEFENSE COUNSEL
> FAILED TO CORRECT FALSE TESTIMONY FROM THE
> STATE'S PRIMARY WITNESS TRENT TALLEY.
>
> GROUND FIVE:  THE PETITIONER WAS DENIED DUE
> PROCESS UNDER THE FOURTEENTH AMENDMENT TO
> THE UNITED STATES CONSTITUTION WHEN THE STATE
> WITHHELD EXCULPATORY EVIDENCE IN THE FORM OF
> A STATEMENT FROM ANTHONY TUCKER AN
> EYEWITNESS TO THE ANTHONY MCNAIR HOMICIDE.

(*See* ECF No. 7, Pet. at 8-29.)

By Order dated February 27, 2014, the Court dismissed the motion for a stay as moot because there was no pending petition to stay at the time Petitioner filed his motion to stay, construed Petitioner's Amended Petition (ECF No. 7) as his all-inclusive Petition, and directed Respondents to file their Answer. (*See* ECF No. 8.)  Respondents failed to file the Answer within the time allotted by the Court.

On May 28, 2014, Petitioner filed his first "Motion for Leave to Conduct Discovery." (ECF No. 12.)  On July 28, 2014, the Court issued an Order to Show Cause directing the Respondents to appear at a hearing to explain why they failed to file a response to the Petition. (ECF No. 13.)  The Court also denied without prejudice the discovery motion as premature in light of the Respondents' failure to answer the petition.  (ECF Nos. 13.)  Respondents filed their Answer on August 15, 2014.  (ECF No. 16.)  On September 29, 2014, Petitioner filed a motion for a 45-day extension of time to file his Reply, which was granted by the Court on November 6, 2014.  (ECF Nos. 19-20.)

On January 12, 2015, Petitioner submitted another "Motion for Extension of Time to File a Reply" along with a motion entitled "Motion for Leave to Conduct Discovery and Expand the Record."  (ECF Nos. 21, 22.)  As explained below, that motion seeks an evidentiary hearing on Petitioner's fifth claim for relief, which alleges violations of *Brady v. Maryland*, 373 U.S. 83 (1963).  More specifically, in Ground Five of his Amended Petition, Petitioner contends that the State withheld exculpatory evidence in the form of a statement from Anthony Tucker (hereafter referred as the "Tucker Statement"), an eyewitness to the Anthony McNair homicide. (ECF No. 7, Am. Pet. at pages 25.)  In support of this claim, Petitioner alleges that Tucker was interviewed personally by lead detective Michael Sperry of the Burlington County Prosecutor's Office, and that a report prepared by Sperry specifically indicates that Sperry taped the interview and that the

taped statement was also transcribed. (*Id.* at 26.) The State, however, "did not provide the tape [sic] statement or the transcript to the defense." (*Id.*) Petitioner also alleges "based on information and belief" that the Tucker Statement was exculpatory evidence that would prove that he is not guilty of knowing and purposeful murder because Tucker's "statement and subsequent testimony would identify the shooter and whether they [sic] were justified in using deadly force." (*Id.* at 26-27.)

The record submitted by Petitioner and Respondents contains an undated report written by Det. Sperry. The report states that Detectives Sperry and Snow conducted an interview with Anthony Tucker, Jr. at 3:14 a.m. on August 5, 2003 at the Burlington County Police Department, and that Tucker provided an audiotaped statement at the conclusion of the interview. (ECF No. 7-1, Report of Det. Sperry). The report also contained the following factual summary of Sperry and Snow's interview with Tucker:

> Anthony Tucker Jr. advised us that he had spent the previous day in Burlington City, New Jersey. He explained that he recently moved from Burlington City to Mount Holly, New Jersey, but frequently returns to Burlington City to visit with friends. Anthony Tucker Jr. said that he spent a portion of his day playing basketball but retired to the residence of his brother's friend "Carlos" once darkness fell. Anthony Tucker Jr. was seated on Carlos' front porch when the victim, whom Anthony Tucker Jr. knows due to his friendship with the victim's son, approached him and offered to sell a pornographic DVD to Anthony Tucker Jr. Anthony Tucker Jr. refused to buy the DVD and the victim continued down York Street toward the intersection of Clarkson Street.
>
> Anthony Tucker Jr. stated that he did not have a clear view of the victim at that time due to vegetation in his line of site [sic].
>
> Anthony Tucker Jr. recalled that the victim approached a red vehicle, which he described as a two door Toyota or Mitsubishi. Anthony Tucker Jr. heard words being exchanged between the victim and the occupants of the vehicle. When Anthony Tucker Jr. stepped off the porch and looked he saw the victim raise his hands up next to his (victim's) bead as he backed away from the vehicle.

6

> Anthony Tucker Jr. saw a light flash and heard a loud bang.
> Anthony Tucker Jr. thought it was gunfire and ducked for cover.
> When he eventually looked back toward the intersection of York
> Street and Clarkson Street he saw the red vehicle begin to speed
> away. See the audiotaped statement, the transcript of the
> audiotaped statement for details.

(*Id.*)

At trial, the following colloquy took place between Petitioner's counsel and Det. Sperry

regarding the report written by Sperry:

> Q:   Detective Sperry, you generated a report with respect to
> this case?
>
> A:   Yes.
>
> Q:   And when you write a report, you include all information
> that you think is important and relevant, correct?
>
> A:   Correct.
>
> Q:   And you take care to make sure you're correct with respect
> to your report, correct?
>
> A:   I attempt to, yes.
>
> Q:   One of the people that you interviewed with respect to this
> case was an Anthony Tucker; isn't that correct?
>
> A:   That's correct.
>
> Q:   In your report it indicates that you took a taped statement
> from Mr. Tucker?
>
> A:   Yes.
>
> Q:   Okay. Is there a tape from Mr. Tucker?
>
> A:   It doesn't exist in our evidence.
>
> Q:   Okay. So although your report indicates an audiotape was
> taken, there is no audiotape of Mr. Tucker in your evidence vault?
>
> A:   That's correct.

(ECF No. 16-46, Trial Tr. 2/1/2005 at 68:8-69:5.)

### c.   Additional Facts alleged in Petitioner's January 9, 2015 Affidavit

In connection with his motion for discovery and to expand the record, Petitioner

submitted an affidavit, dated January 9, 2015, and accompanying exhibits, detailing his trial

counsel's attempt to obtain the Tucker statement prior to trial, Petitioner's attempts to obtain the Tucker Statement after trial, and his attempts to pursue his *Brady* claim related to the Tucker Statement in his PCR proceeding.  (ECF No. 22-1, Jan. 9, 2015 Affidavit of Tivon Neals).  According to the January 9, 2015 Affidavit, Petitioner's trial counsel, Timothy Reilly ("Reilly"), obtained Detective Sperry's Report, which is described above, from Deputy First Assistant Prosecutor James A. Ronca ("Ronca") of the Burlington County Prosecutors Office ("Prosecutor Ronca") prior to trial.  (*Id.* at ¶¶ 4-5.)   In a letter to Ronca, dated September 22, 2004, Reilly sought to determine in relevant part whether Ronca had the taped statement(s) from Anthony Tucker, and to obtain a copy of the Tucker Statement.  (*Id.* at ¶ 6.)  Prosecutor Ronca responded to Reilly in a letter dated October 19, 2004, that Ronca did not think a taped statement was ever taken from Anthony Tucker, that there was "no record that [the Burlington County Prosecutor's] Office ever transcribed any such statement[,]" that he had  "reviewed all the physical evidence" and "there is no such recording either physically present or mentioned in any in any evidence log."  As such, Prosecutor Ronca concluded that "Det. Sperry must have been mistaken when he wrote in his report that he took a taped statement from Tucker."  (*Id.* at ¶ 7 (citing October 19, 2004 Letter from James A. Ronca).)

In the January 9, 2015 Affidavit, Petitioner also alleges that in 2007, he unsuccessfully made Open Public Records Act ("OPRA") requests to the Burlington County Police Department and the Burlington County Prosecutor's Office seeking information related to the Tucker Statement. (ECF No. 21-1, Pet. Aff. at ¶¶ 10-12.)  According to Petitioner, both requests were denied.  (*Id.* at ¶¶ 11-12.)  Petitioner alleges that on May 6, 2009, he wrote a letter to his PCR counsel asking him to investigate Petitioner's *Brady* claim and to locate Tucker.  (ECF No. 21-1,

Pet. Aff. at ¶16.) Petitioner alleges that although Kraft initially refused to investigate his claim, a limited investigation was ultimately conducted, but Tucker could not be located. (*Id.* at ¶¶16-17.)

In his January 9, 2015 Affidavit, Petitioner also states for the first time that on or around June 26, 2009, while his PCR petition was pending, Kraft provided him with the previously undisclosed Search Warrant Application of Detective Alan Snow of Burlington City Police Department for the search of the Trent Talley's mother's home and car, and the seizure of weapons. (*Id.* at ¶ 17.) The Affidavit of Probable Cause signed by Det. Snow is dated August 7, 2003, two days after the McNair shooting, and states in relevant part:

> Occupants of the vehicle were described as two black males. The driver was specifically described as a dark skin black male wearing a white "T" shirt and a white, green and yellow baseball cap that looked like a Boston Celtics hat. The front seat passenger was specifically described as a light skin black male.

(*See* ECF No, 21-2, Search Warrant Application, attached as Ex. Pa-9 to Plaintiff's Jan. 9, 2015 Affidavit (emphasis added).) Plaintiff alleges in the January 9, 2015 Affidavit that he is a black male with a dark complexion. (ECF No. 21-1, Jan. 9, 2015 Affidavit at ¶ 18.) Plaintiff alleges that he told Kraft that the description of the front seat passenger contained in the Search Warrant Application's affidavit of probable cause was "highly exculpatory because [Petitioner] is a black male with a very dark skin complexion; the state alleged that [Petitioner] was the front seat passenger the night of the shooting; and the jury did not hear any testimony regarding a different description of the front seat passenger." (*Id.*) Petitioner also alleges that he "told Mr. Kraft that [Petitioner] believed [that] the witness who gave Det. Snow that description was Anthony Tucker, Jr. (*Id.*)

In the January 9, 2015 Affidavit, Plaintiff alleges that Kraft submitted a brief in support of the PCR Petition that did not mention the *Brady* claim, and allegedly attempted to have Petitioner waive the claim through a verification that Petitioner refused to sign. (*Id.* at ¶ 20.)

9

The record submitted by Respondents reflects that Petitioner's counseled brief, submitted by Kraft on September 30, 2009, did not raise a *Brady* claim related to the Tucker Statement and/or the Search Warrant Application. (*See* ECF No. 16-22, Brief in Support of Petition for Post-Conviction Relief.) On December 15, 2009, Kraft also submitted a letter reply brief in further support of Petitioner's PCR petition, which likewise did not address any *Brady* material. (ECF No. 16-24.) In the January 9, 2015 Affidavit, Plaintiff contends that he sent a letter to the New Jersey Public Defender's Office and the PCR Court stating that Kraft was not advancing his claims and that he wanted additional time to submit his own brief.[1]   (ECF No. 21-1, Pet. Jan 9, 2015 Affidavit at ¶ 20.)

The hearing on Petitioner's PCR petition was held on January 29, 2010. (ECF No. 16-52.) At the motion hearing, Petitioner stated repeatedly that he "did not consent to [Kraft] being [his] lawyer" and that he wanted to proceed *pro se*. (*Id.* at 3:11-13; 10:11-15.) The Court did not allow Petitioner to withdraw his PCR and refile it *pro se* or delay the proceeding to permit Petitioner to submit a brief; instead, the Court permitted Petitioner to "advance whatever arguments [Petitioner wanted] to advance" during the hearing. (*Id.* at 16:3-25; 12:24-13:6) Petitioner subsequently attempted to set out his *pro se* claims for relief (*see, e.g.*, *id.* at 17:1-21:1); he did not, however, specifically mention the alleged *Brady* violation related to the loss/destruction of the Tucker Statement or inform the PCR court about the *Brady* material referring to a light-skinned black male passenger from the affidavit of probable cause sworn by

---

[1] That letter is not part of the record submitted by Petitioner or Respondents; however, in the PCR hearing, which took place on January 29, 2010, the PCR court references a January 8, 2010 letter submitted to the Court by Petitioner. (See 16-52, Transcript of PCR Motion at 10:11-18.)

Detective Snow.[2]  The PCR court denied Petitioner's PCR petition in a written opinion dated

February 2, 2010.  (*See* ECF No. 16-25.)  The Opinion does not address Petitioner's *Brady* claim

related to the Tucker Statement or any other material.

Petitioner appealed the denial of his PCR petition to the Appellate Division.  In his *pro se*

supplemental letter brief, Petitioner argued that his PCR counsel, *i.e.*, Kraft, failed to raise the

following claims identified in Petitioner's original verified petition:

> **Ground I**
>
> Trial Counsel was ineffective for his failure to correct perjured
> testimony of the State's key witness, mainly Trent Talley.
>
> **Ground II**
>
> Prosecutor misconduct whereas the state suppressed Brady
> material in the form of a witness statement mainly Anthony Tucker
> was lost or destroyed therefore violating defendants [sic] right to a
> fair trial and due process of law.

(ECF No. 16-31, Petitioner's Pro Se Supplemental Letter Brief on Appeal.)  Petitioner contended

that both claims were supported by the record, and that "the lead detective from the Burlington

County Prosecutor's Office Michael Sperry admitted he had taken a statement from an

---

[2] Although the transcript is somewhat convoluted, Petitioner appears to refer to different facts in
Snow's affidavit of probable cause and seems to suggest that his trial attorney, Reilly, had access
to this information prior to trial.

> Also, and I do have this now today, the theory of, the original
> theory of the prosecution's office was that there was two people in
> the vehicle.  One of the, one of the detectives said specifically in
> the affidavit in support of probable cause that there was two people
> in the vehicle according to his witnesses and according to his
> investigation. Now this, none of this was heard by the trier of fact,
> the jury, so basically, I can't – he knew, I'm talking about my trial
> attorney, he knew specifically that this evidence was in existence.
> He was supposed to put it on the stand and he chose not to.

(*Id.* at 19:14-20:10.)  Thus, it is not clear whether Petitioner's allegation that the State withheld
the Search Warrant Application is accurate.

eyewitness Anthony Tucker but did not know where the statement was located proven [sic] the state withheld or destroyed evidence in the case." (*Id.* at 11.) Petitioner further contended that "[t]he PCR Court did not adjudicate either issue, preventing the claim from being cognizable for further state and federal review" and sought relief in the form of a new PCR hearing. (*Id.* at 11.)

In its opinion affirming the denial of Petitioner's PCR petition, the Appellate Division separately addressed the issues raised in Petitioner's pro se supplemental letter brief, finding them to be without merit and not warranting extended discussion. *See State v. Neals*, 2012 WL 1161556, at *7 (App. Div. Apr. 10, 2012) (citing N.J. Ct. R. 2:11-3(e)(2)). The Court added the following with respect to the alleged *Brady* violation:

> The other issue raised by Neals relates to an alleged *Brady* violation concerning a witness statement. Neals is correct that the issue was not raised in defense counsel's brief, and not otherwise brought to the judge's attention. However, Neal's *pro se* petition provides no basis for that claim. Our review of the record convinces us it is without merit.

*Id.* at *8. As noted above, Petitioner appealed, the New Jersey Supreme Court denied certification, *see* 212 N.J. 455 (2012), and this Petition followed.

## III. ANALYSIS

### a. Petitioner's Motion for Discovery and Expansion of the Record

Petitioner seeks leave to conduct discovery to expand the record with respect to Ground Five of his habeas petition, which sets forth an alleged Brady violation in connection with the Tucker Statement. (*See* ECF No. 21-1.) "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course ." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (emphasis added); *see also Harris v. Nelson*, 394 U.S. 286, 300 (1969) ("broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding."). In a federal habeas action, discovery is authorized in Rule 6 of the

Rules Governing Section 2254 Cases in the United States District Court only by leave of court upon a showing by the petitioner of "good cause," which may be made "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief [.]" *Harris*, 394 U.S. at 300; *see Bracy*, 520 U.S. at 908–09; *see also* 28 U.S.C. § 2254 Rule 6(a) ("A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.")

As a preliminary matter, a district court must identify the essential elements of a petitioner's claims and address whether the discovery requests are related to a constitutional challenge in the petition. *Bracy*, 520 U.S. at 904–5. A petitioner also must demonstrate good cause for the discovery by setting forth specific allegations that lead the court to believe, if the facts were fully developed, he may be entitled to relief. *Bracy*, 502 U.S. at 908–09. A petitioner may not engage in a fishing expedition, and "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir.1991); *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir.1994). If good cause has been shown, the scope and extent of discovery is left to a district court's discretion. *Bracy*, 520 U.S. at 909.

Notably, in *Cullen v. Pinholster*, ––– U.S. –––, 131 S.Ct. 1388 (2011), the Supreme Court ruled that review under 28 U.S.C. § 2254(d)(1), *i.e.*, involving a decision that was alleged to be contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, "is limited to the record that was before the state court that adjudicated the claim on the merits[,]" 131 S.Ct. at 1398, and that "evidence

13

introduced in federal court has no bearing on § 2254(d)(1) review.  Thus, if a claim has been

adjudicated on the merits by a state court, a federal habeas petitioner must overcome the

limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 1400 (emphasis

added).  As recently explained by the Third Circuit, where a claim has been adjudicated on the

merits, "[n]ew evidence produced in a hearing before a habeas court . . . may not be used to

assess whether the state court's decision was contrary to or involved an unreasonable application

of clearly established federal law." *Branch v. Sweeney*, 758 F.3d 226, 241 (3d Cir. 2014)

(quoting *Pinholster*, 563 U.S. at 180-81(emphasis added)); *Reddick v. Warren*, No. CV 12-7875

(SDW), 2016 WL 29261, at *17 (D.N.J. Jan. 4, 2016) (explaining same), *certificate of*

*appealability* denied (May 25, 2016).  Put another way, in seeking habeas corpus relief, a

Petitioner may not base his case on facts that he believes could be developed at a hearing in the

habeas corpus court.  *See Branch*, 758 F.3d at 242 (explaining that Branch based his case for

habeas relief on affidavits already developed and presented in the state court below).

 Petitioner contends that his *Brady* claim regarding the Tucker Statement was not

adjudicated on the merits because the PCR court did not rule on it, and the Appellate Division

failed to send the claim back to the PCR court for a ruling in the first instance.  For the purposes

of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when

a state court has made a decision that (1) finally resolves the claim, and (2) resolves th [at] claim

on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724

F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

 The Court agrees with Respondents that Petitioner's *Brady* claim related to the Tucker

Statement was adjudicated on the merits by the New Jersey Appellate Division, albeit in a

summary fashion. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011) (reconfirming "that §

2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'"). The fact that the PCR court failed to rule on the claim does not change the fact that Appellate Division considered and rejected that claim on the basis of its substance, *i.e.*, found it meritless based on the record before it. As such, Petitioner must show that the rejection of the *Brady* claim regarding the withholding of the Tucker Statement involved an unreasonable application of clearly established law based on the record before the state court, which in this case was very limited, and may not conduct discovery in the hopes of finding information that would allow him to overcome the limitation of § 2254(d)(1).

To prove a violation under *Brady*, a petitioner must demonstrate: (1) the state withheld evidence either willfully or inadvertently; (2) the evidence in question was favorable to the petitioner either because it is exculpatory or it is impeaching; and (3) the evidence was material, requiring there be a reasonable probability the withheld evidence would have produced a different verdict. *See Brady*, 373 U.S. at 83. A petitioner has the burden of demonstrating the State withheld or suppressed evidence. *See Maynard v. Gov't of Virgin Islands*, 392 F. App'x 105, 119 (3d Cir. 2010). Petitioner's Amended Petition alleges "based on information and belief" that the Tucker Statement contained material exculpatory evidence that would prove that he is not guilty of knowing and purposeful murder because Tucker's "statement and subsequent testimony would identify the shooter and whether they [sic] were justified in using deadly force." (ECF No. 7, Am. Pet. at 26-27.) He provides no factual basis for this belief in the Amended Petition, and the record before the state court does not support his argument. The report prepared by Detective Sperry summarizing Tucker's interview does not contain any suggestion that the missing Tucker Statement contained this information or any other exculpatory material. (*See*

ECF No. 7-1, Report of Det. Sperry), and Sperry's trial testimony at best suggests the Tucker

Statement was lost or destroyed. (*See* ECF No. 16-46, Trial Tr. 2/1/2005 at 68:8-69:5.)

Here, it appears that Petitioner is seeking discovery on his *Brady* claim regarding the

Tucker Statement (Ground Five) in the hopes of locating the Tucker Statement (or Tucker

himself) and finding that the Tucker Statement contained exculpatory material, which, he, in

turn, could use to show that the state court decision rejecting his *Brady* claim was contrary to or

involved an unreasonable application of clearly established law. This use of discovery is plainly

barred by *Pinholster*. As such, the Court will deny Petitioner's request for discovery with

respect to Ground Five of his Amended Petition. The Court next addresses what appears to be an

attempt to amend Ground Five of his Amended Petition to clarify his *Brady* claim.

### b. Petitioner's Attempt to Amplify his *Brady* Claim in the January 9, 2015 Affidavit

As described above, in his January 9, 2015 Affidavit, Plaintiff appears to amplify or

clarify the *Brady* claim alleged in Ground Five of his Amended Petition by alleging, among other

things, that the State also withheld a Search Warrant Application that included a description of

the front seat passenger as a light-skinned black male. (ECF No. 21-1, Jan. 9, 2015 Affidavit at

¶¶ 17-19.) These facts, described below, appear only in the January 9, 2015 Affidavit and are

not included in Ground Five of Petitioner's Amended Petition. In light of Petitioner's *pro se*

status, it is possible that Petitioner's submission, though characterized as a request for discovery,

is also an untimely attempt to amend his Amended Petition to amplify the *Brady* claim raised in

Ground Five of his Amended Petition.

Untimely amendments to an original habeas petition are permissible if they arise "from

the same core facts as the timely filed claim" so that they relate back to the original, timely

petition. Amendments to pleadings which are filed outside the limitations period will relate back

16

to the filing date of the original pleading, and will therefore be considered timely, if they arise from the same "conduct, transaction, or occurrence" as the original pleading. Fed. R. Civ. P. 15(c)(2). In *Mayle v. Felix*, 545 U.S. 644, 650, 656-57 (2005), a decision applying this Rule in the habeas context, the United States Supreme Court declined to allow relation back of a habeas claim where the "new claim stems from the habeas petitioner's trial, conviction, or sentence," because "[u]nder that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." Instead, the Court held that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims" and that a claim will not relate back if it is "supported by facts that differ in both time and type from those set forth in the original pleading." *Id* at 659, 650. Prior to *Mayle*, the Third Circuit in *United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000), held "that Rule 15(c)(2) applies to § 2255 petitions insofar as a District Court may, in its discretion, permit an amendment to a petition to provide factual clarification or amplification after the expiration of the one-year period of limitations, as long as the petition itself was timely filed and the petitioner does not seek to add an entirely new claim or new theory of relief"; *see also Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009) (finding that ineffective assistance claim in Petitioner's Supplemental Memorandum and the right-to-appeal claim in his original 2255 motion "are tied to a common core of operative facts" (citing *Mayle*, 545 U.S. at 664) as "both concern the erroneous advice that Hodge's counsel provided about the filing deadline for the appeal"); *United States v. Underwood*, 246 F. App'x 92, 94 n.2 (3d Cir. 2007) (declining to decide whether untimely claim for ineffective assistance

of counsel on appeal and at trial related back to claim of ineffective assistance of counsel on appeal only and finding that it was a "difficult question").

The allegations in Ground Five of the Amended Petition and in the January 9, 2015 Affidavit appear similar in time and type. Ground Five is a *Brady* claim premised on the State's alleged withholding of the Tucker Statement, which, according to Detective Sperry's Report, was taken by Detectives Sperry and Snow on August 5, 2003, the morning of McNair's shooting. Although the report purports to summarize the Tucker interview, the full contents of the Tucker Statement, to the extent it exists, is unknown. Petitioner's January 9, 2015 Affidavit, provides facts regarding his and his counsels' attempts to obtain the Tucker Statement. That Affidavit also states that the State also withheld a Search Warrant Application, dated August 7, 2003, that included an Affidavit of Probable Cause signed by Detective Snow, which stated that a unknown witness described two passengers in the Mitsubishi Eclipse, and that "[t]he front-seat passenger [of the Mitsubishi Eclipse] was specifically described as light skin black male." (ECF No. 21-2, Search Warrant Application dated Aug. 7, 2003, attached to Petitioner's Jan. 9, 2015 Affidavit." Petitioner further alleges in the January 9, 2015 Affidavit that he believes that Anthony Tucker is the witness who made the statement describing the passenger as a light skin black male. (*Id.*) Finally, Petitioner contends that this information, which he received from his PCR attorney in 2009 during the pendency of his PCR proceeding, is exculpatory because the State's case relied on testimony from the other two occupants of the vehicle who testified that Petitioner was the front-seat passenger in the car at the time of the shooting; Petitioner, however, contends that he is a dark-skinned black man. (*Id.*) The Court finds that, under *Mayle* and *Thomas*, a common core of operative facts unites the original *Brady* claim alleged in Ground Five to the facts alleged in

the January 9, 2015 Affidavit, including the alleged withholding of the Search Warrant Application. As such, the attempted amendment relates back under Fed. R. Civ. P. 15.

That is not the end of the matter, however, because it appears clear from the record that Petitioner has not exhausted the aspect of his *Brady* claim related to the State's alleged withholding of the Search Warrant Application, as he has failed to present this aspect of his *Brady* claim to the state court in the first instance. The principle of federal-state comity has long required a state prisoner to give the state courts an initial opportunity to pass upon and correct alleged violations of federal rights before a federal court will entertain his habeas petition. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). The Supreme Court has emphasized that to exhaust available state remedies "the federal claim must be fairly presented to the state courts . . . . Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Id.* at 275-76 (citations omitted). The Third Circuit Court of Appeals has also stated that a fair presentation of a federal claim to the state courts requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. Both the legal theory and the facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court. *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted).

While the failure to exhaust state remedies does not deprive a federal court of subject matter jurisdiction to consider the merits of a habeas corpus application, it is indeed a statutory requirement of every § 2254 petition that federal constitutional claims be raised and addressed on the merits in all available levels of the state court prior to the filing of a habeas petition in the federal court. *See Granberry v. Greer*, 481 U.S. 129 (1987); *Rose v. Lundy*, 455 U.S. 509, 516–

19

18 (1982); *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993). Where any available state procedure remains, even if only theoretically, the claims cannot be deemed exhausted. *See* 28 U.S.C. § 2254(c). Correspondingly, district courts are obligated to dismiss habeas petitions containing unexhausted claims, even if it is not likely that a state court will consider the claims on the merits. *See Rose*, 455 U.S. at 522; *Banks v. Horn*, 126 F.3d 206, 212–14 (3d Cir. 1997); *see also Toulson*, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies"). Analogously, if a petition contains a mix of duly exhausted and unexhausted claims (such petitions are referred to as "mixed" petitions), the petition is also subject to dismissal for failure to exhaust unless: (1) the petitioner withdraws all his unexhausted challenges; or (2)(s)he duly obtains "stay and abeyance" under *Rhines*, 544 U.S. 269, with the goal of exhausting his not-withdrawn unexhausted claims in the state court; or (3) the petitioner's unexhausted challenges are so facially meritless that they warrant denial of habeas relief under § 2254(b) (2) regardless of the failure to exhaust.[3] *See Mahoney v. Bostel*, 2010 U.S.App. LEXIS 3916, at *5–6, 2010 WL 653492 (3d Cir. Feb. 24, 2010); *see also Thompson v. Warren*, No. CIV.A. 11-7164 RMB, 2015 WL 93751, at *3 (D.N.J. Jan. 7, 2015) (explaining same).

Thus, although the Court will grant Petitioner's motion to amend to the extent Petitioner seeks to clarify his *Brady* claim to include the facts alleged in the January 9, 2015 Affidavit, the Court finds that the claim is unexhausted with respect to the State's alleged withholding of the

---

[3] Although the Court otherwise expresses no opinion about the merits of the unexhausted aspect of Petitioner's *Brady* claim, it does not appear to the court that it is so facially meritless as to warrant denial of habeas relief regardless of the failure to exhaust.

Search Warrant Application. As such, the Court will dismiss the Amended Petition as mixed, and will provide Petitioner with 45 days within which to either (1) submit a Second Amended Petition (that includes both his exhausted claims and the unexhausted portion of his *Brady* claim), along with a motion for a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005) or (2) advise the Court that he intends to proceed with his Amended Petition as filed (*i.e.*, ECF No. 7) and withdraw the unexhausted portion of his *Brady* claim related to the Search Warrant Application. Once the Court receives Petitioner's response, it will enter an appropriate Order, either staying the case pending exhaustion, or adjudicating the original Amended Petition on the merits.

### IV.   CONCLUSION

Petitioner's motion to conduct discovery and to expand the record is denied as barred by *Pinholster*. Based upon Petitioner's Affidavit submitted in connection with that motion, the Court will, however, permit Petitioner to amend his Amended Petition to clarify his *Brady* claim to include the facts related to the State's alleged withholding of the Search Warrant Application. The Court finds that Petitioner has not exhausted this aspect of his *Brady* claim, and will therefore dismiss the Amended Petition as mixed and provide Petitioner with 45 days to either (1) submit a Second Amended Petition (that includes both his exhausted claims and the unexhausted portion of his *Brady* claim), along with a motion for a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005) or (2) advise the Court that he intends to proceed with his original Amended Petition (*i.e.*, ECF No. 7) and withdraw the unexhausted portion of his *Brady* claim related to the Search Warrant Application. An appropriate Order follows.

21

_____
Freda L. Wolfson, U.S.D.J.

Date: _Feb. 27_, 2017